May it please the Court, my name is Nicholas Warrenoff. I represent the appellant, Pacific Shores. This is an appeal from the District Court, which in turn heard an appeal from the Bankruptcy Court. And in that situation, this Court independently reviews the Bankruptcy Court decision. The primary issue on appeal is a question of law, which of course is subject to de novo review by this Court. Our position, in a nutshell, is that the lower courts erred because they ordered rejection of the two leases in question to a date prior to the date on which the landlord recovered possession of the spaces demised under the two leases. And the reason that this is a reversible error is that when Congress enacted the 1984 amendments and added Section 365d3 to the Bankruptcy Code, Congress struck a balance. Congress recognized, as is the case here, that when the petition was filed, the leases immediately became property of the estate of the debtor. And as a result of that, and as a result of the automatic stay, the landlord could not retake possession of those spaces, regardless of what use the debtor was or was not making. The automatic stay prevented the landlord from retaking possession of those two spaces. The landlord could not reelect those two spaces, those two leases, the spaces demised under those two leases, to a new tenant, because the debtor had control of those spaces and the automatic stay prevented the landlord from delivering possession to another tenant. I have a confusion. Maybe you can help me. At the time that the tenant here gave notice of rejection, the process was that the tenant improvements were being made to the space in question. Is that correct? The tenant improvements were – there's no actual evidence in the record on that point other than the statement or admission by the tenant's attorney that he had seen a certificate of completion for the construction. Well, I guess I'm off the page then. Was or was not the status of the subject premises being prepared with leasehold improvements, and no one had occupied or used that at the time of the notice to reject? The space was not – had not been occupied and was not being used, but nevertheless, the term of the leases had commenced. Of course. Now, was rent being paid to the landlord on that portion of the premises that was being renovated? Well, the answer is yes. These two leases comprise two entire buildings in the Pacific Shores premises. And when I say that the term of the leases had commenced, what I am saying is that the obligation to pay rent had commenced and rent, in fact, was being paid and had been paid prior to the filing of the petition. Oh, okay. So I understand. I understand what I read. Thank you. Were you in a position to re-let the space at that point? In other words, if you had gotten possession, the date of rejection, would you have been in a position to re-let the space at that point? If Your Honor is asking as a practical matter, did we have a tenant ready, willing, and able to move in on that date, there's nothing in the record on that. However, the balance that was struck by the Congress in Section 365-D3 is that the landlord is entitled to compensation while it is deprived of its property. There is nothing in the statute that requires the landlord to show that it could have put another tenant in there earlier. And this is made clear, I think, by this Circuit's two decisions in the Pacific Atlantic case, which is followed in the Zuckerman case, spelled C-U-K-I-E-R-M-A-N. I understand from someone who knows Mr. Zuckerman that the pronunciation is Zuckerman. But in those two cases, if we saw Pacific Atlantic, there was no – this Court did not impose any requirement on the landlord to show that it could have re-let the space during that 60-day period. The Court specifically stated that the landlord need take no action in order to be entitled to recover the contract rent pre-rejection. Of course, that's not even the issue here. The only issue here is the retroactive effect of the notice. And if we use thinking machines and what the district court did in affirming the action of the bankruptcy court is they applied, rather than the date of the order, the rejection of lease, the date that the notice was given, a period of 11 days. And all we're arguing about is administrative expense in between, which reference rent. And that's why I asked the question, because I couldn't figure out what this rent number was, whether the rent number was everybody's rent, the two buildings' rent, the rent of the subject property. But in any case, the only issue is retroactive effect. That is correct. And so whether you could have rented it or whether you could not have rented it, I'm not too sure I think that even applies here, because the rationale has been gone on from the majority to the minority position on this after the amendments that you talk about, and thinking machines seems to indicate, seems to indicate that it's an abuse of discretion or whether or not they apply it retroactively based upon the circumstances. In this case, 11 days never occupied in the middle of revamping or putting in tenant improvements. Isn't that where we are? Okay. Yes. There are two different points, I think, in your honest comment. Number one, I agree that it is not an issue whether or not we could have mitigated our loss or whether or not we had an immediately ready, willing, and able tenant, because as this Court has interpreted 365-D3, the landlord need not take any action to be entitled to the contract rent. Now, in terms of thinking machines, the thinking machine's discussion of retroactivity is dictum on the Court's own description in its decision. But more importantly, thinking machines never decided the actual issue before this Court, which is whether it is legally permissible to order retroactivity prior to the date of possession. Thinking machines just address the issue of retroactivity in the abstract, and the subsequent two thinking machines, the United States Supreme Court in the Noland case and the reorganized CF&I fabricators cases, which we cited in our reply brief, limited the equitable power of a bankruptcy court, and as earlier cases had also said, the bankruptcy court cannot use the 365-D3 to take away an entitlement in some other provision of the bankruptcy code. And what we have here in 365-D3 is an entitlement to administrative rent up until rejection. The common thread. Yeah, but that just goes in circles. I mean, are we going to write an opinion now that determines that? Are you asking us to interpret those two concepts and the fact that this administrative expense is going to trump the retroactive effect and that it's an abuse of discretion not to allow administrative expenses when you make a retroactive decision on the rejection of the lease regardless of the incidence relative to the rejection and the retroactive effect? In other words, the 11 days, blah, blah. Our position is that it's more than an abuse of discretion. It's an error of law, which I guess establishes abuse of discretion. You're saying that we're going to say that those two positions of the bankruptcy court are in conflict and that you never can have a retroactive application? No, that is not our position. Our position is that you can never have a retroactive application prior to the landlord's recovery of possession, because what 365-D3, the purpose of 365-D3 was compensation for deprivation of possession. So when we reconciled the precedents in our brief, there can be a, for example, there are cases where the landlord recovered possession prior to the filing of the motion. So in that case, you could have retroactivity to the motion date. No, that's obvious. I hope that would be obvious, but that's not what happened here. You have a case. You have the case that actually is cited by thinking machines in footnote 7, the Jamesway case, where the landlord asserted a frivolous objection to delay the hearing. And in that situation, in Jamesway, the court ordered retroactivity back to the date that the hearing would have been held, but for the frivolous objection. And that goes, doesn't that go to the discretion and how you analyze the discretion of the bankruptcy court? Here we found none of those extraordinary things. They did it in 11 days. They would have done it sooner, but there was a holiday in between. They hadn't even selected the debtors committee yet. So, I mean, I don't know what, if you're saying that the administrative expense section is going to trump the provision for retroactive effect, i.e., the equitable authority or the equitable powers of the bankruptcy judge, then I'm trying to hang on to what that means. I mean, where's the authority that says we're going to do it? How do you analyze it? Unless you analyze what was going on when this decision was made by the bankruptcy court, say, gee, I think we ought to make it retroactive. Well, Section 105 and the bankruptcy court's equitable powers are not some roving commission to reorder priorities. The very purpose of 365d3 was to compensate the landlord for the involuntary deprivation of its property. The landlord, unlike other creditors, is put in a unique situation because it is involuntarily deprived of the use of its property. Then I suppose you'd want us to write the opinion to say unless the landlord has been involved in a particular situation, there is no retroactive application of the rejection order absent that. That is correct, Your Honor. That is our position, because that is what we see. The legislative history is 365d3, and that seems to be the rule of Pacific Atlantic and of Zuckerman. Do you see specific textual support for your position in the statute? And if so, where? I see it. That precise limitation that you want to apply about the landlord's possession. I see it in the legislative history quoted in Pacific Atlantic and Zuckerman, where in Zuckerman, it's at page 851, where the court is explaining the legislative history for 365d3 and states, quote, the landlord is forced to provide current services the use of its property. So is that a concession that it's not in the text of the statute? The statute does not address yes. The statute itself, in as many words, does not say that retroactivity can or cannot be granted. Okay. Thank you. I'd like to save my remaining time for rebuttal. You may do that. Thank you. And we'll hear from Mr. Metcalf. I think you can raise that microphone so you don't hurt your back. Thank you. Good morning. Brian Metcalf of Melbourne & Myers on behalf of the Debtor Aptly At Home Corporation et al. It's also a pretty sensitive mic. I doubt that you have to lean over. I apologize. Initially, I would like to touch on something that has been raised by the panel here, and that is the appropriate standard of review. It appears to me that Pacific Shores has more or less conceded in its reply brief that a retroactive rejection of a nonresidential real property lease may be appropriate under certain circumstances and that such a decision is left to the sound discretion of the bankruptcy court. It also appears to concede that this decision to exercise such relief is within the equitable powers of the bankruptcy court. And to me and to the debtor in our position is that this means the appropriate standard of review for the bankruptcy court's decision here should be an abuse of discretion. Pacific Shores seems to sort of take away from that concession that there is a technical legal possession of the lease premises that must be returned before a rejection can be made effective. As the panel has appeared to note, nothing in the statute requires that. In addition, I have not located one case, nor has Pacific Shores cited one case, that requires the return of legal possession. The third problem with this standard of return of so-called or technical legal possession is the fact that even in cases where the debtor has, for example, locked out, I'm sorry, the debtor has been locked out pre-petitioned by the landlord or the landlord delays a hearing on a rejection motion, the debtor probably still has a right, a bare right and an exercised right to legal possession of the premises and theoretically could probably even seek to enforce that in the bankruptcy code if it wished to take the premises back. But in any event, legal possession argument has no support in either the code, the case law, and is feasibly unworkable. The third problem, or I'm sorry, the fourth problem with it is actually the fact that in any event where a debtor is seeking to reject a lease, it is determined that it has no economic value. That means either it is at above market rate and it can't be effectively or economically assigned to a third party, so it seeks as quickly as possible to reject the lease. Now, a landlord has no incentive in that case to take back the so-called legal possession of the premises. In particular, in this case, it would be incredibly unlikely, and Pacific Shores never stated that it would have accepted any sort of surrender or taking back a legal possession of the premises. In fact, all of its actions in this case are really to the contrary. Instead of offering to the debtor, yes, we will take back the premises, yes, you know, if you offer us a surrender, we will accept it, instead they just oppose non-protunct rejection. What is your response to the arguments based on legislative history? Well, I believe both 365A and 365D3 make it clear that the purpose of these provisions of the code is one, to allow the debtor to reject a lease and escape either, you know, above market rates or leases that can't be assigned effectively to third parties and avoid incurring additional amounts of administrative rent that would be absorbed by the general creditor body. I also think that the intent of 365A and 365D3 set forth in legislative history is to allow the landlord with the opportunity to take whatever actions are necessary to prepare the premises for relaying. If you look specifically at the legislative history of 365D3, it indicates that it more or less has two goals. One, it's supposed to incentivize the debtor to make a quick decision whether or not it wants to reject a particular lease so the landlord is not left with any sort of uncertainty regarding the proposed treatment. In addition, it's supposed to protect the landlord from providing any uncompensated services during the prerejection period, for example, where the debtor is utilizing services or occupying the space, and CAM charges, for example, are being incurred that it otherwise would not have to pay for in the absence of 365D3. I think that is what the legislative history says. And I think if you look at, for example, the thinking machines case, this isn't a free-floating equity decision made by the court that's tied only to Section 105, which is, I believe, the position that Pacific Shores takes. The thinking machine specifically states that the exercise of equity and to order a retroactive rejection of a lease must be tied to specific purposes and intents of Section 365 of the Bankruptcy Code. And is that your position you'd like us to adopt, the First Circuit's approach, then? I think it is both well-reasoned and I think it is appropriate. And I think realistically speaking, as a practical matter, it works. And it worked in this case, and I think that the Bankruptcy Court's discretion was In other words, there could be, as it was up through the thinking machine's decision, there could be two positions, one, date of the order always prevails, order allowing rejection, or the date of the motion. Then you'd have to look and see what happened, all the equities that happened relative to the landlord and its position and the lessee and its position, which happened here. I take it that's what you'd like us to say. That's correct. I would also add that it's not necessarily that the Bankruptcy Court has a choice of either the date of the order or the date of the motion. To the extent the equities required it, it could pick any date. It could refuse to make it the date of the motion. It could make it as a date between the date of the motion, for example, the date of the hearing on the motion. It's just a question of retroactivity or the date of the order, then? That's correct. Okay. And in the instance where, you know, what should guide a court's decision in determining whether or not to give retroactive effect to a rejection as requested by a debtor, it should be guided by the specific facts and circumstances of any given case. And this is typical when you give a Bankruptcy Court the ability to exercise its discretion in applying the code consistent with equitable principles. And I believe that the Bankruptcy Court's decision in this case was clearly right based on the particular facts and circumstances that were presented before it. And the Bankruptcy Court more or less enunciated four important factors which I think are consistent with both the case law and the purposes and intents of Section 365 of the Bankruptcy Code when it made its decision. The first of all is that the debtor moved immediately on the very first day of the case to reject this lease and, in fact, faxed notice of that motion and served the motion on Pacific Shores on the very first day of the case, which was September 20, 2001. It could have done this no sooner. It started the process as soon as it possibly could. The second issue was the hearing date. Now, I don't think anyone has ever conceded or stated that the debtor was dilatory in any way in seeking to have this motion heard as soon as it reasonably could under the circumstances consistent with giving landlords both an opportunity for hearing and notice of the motion. I do think absolutely, and the Bankruptcy Court noticed that this was practically as soon as possible under the given circumstances. Now, the period between the date of the filing of the motion and the date of the hearing at which the Bankruptcy Court definitively resolved the retroactive rejection issue was 11 total calendar days. Now, it's less than that if you count court days, considering the fact that there were some weekends involved and also there was, I believe, a court holiday. The third factor that the Bankruptcy Court considered was the fact that the debtor was not occupying the property. Now, if it's a question of actual possession versus legal possession, perhaps the exercise right, if it so chose to exercise it, a bear right at that, to the property. But I think it made clear in its rejection motion that it wanted nothing to do with its property whatsoever. And I believe that. Kennedy. I guess the only abstract question I had in that regard was counsel indicated that when they signed the lease, they signed the lease on the two buildings and this particular property was within those two buildings. That's correct. And then there was some, reading the briefs, I'm not too sure. There was some numbers thrown around about the rent that might have been the issue, whether you considered the rejection date, the date of the motion, or the date of the order. And I thought it was a million dollars or something like that, and there was some per day cost. Now, is that something that was allocated to this space that was being brought up to speed with tenant improvements, and was it allocated out, or did I misread something there? No. In fact, no. The rent for these two unfinished, unoccupied properties was running at over a million dollars per month. Okay. So none of the property was occupied at that time. That's correct. It was not finished. No certificate of occupancy had issued. The debtor had never occupied the space. So no rent had ever been paid. Well, no. Actually, up to the date of the rejection, rent had been paid. And I believe as a result of certain actions taken by Pacific Shores, they were actually current on the date of rejection. Okay. And the rent then, so the issue would have been, I get the picture. I get the picture now. I misinterpreted something about this space being a partial, but the rent for the two buildings was being paid, the two buildings were being renovated, never occupied. That's correct. Okay. Gotcha. And, you know, the third factor, as I was stating before, is that the fact that these were not occupied buildings. They were never occupied by the debtor. Pacific Shores has made no argument that the debtor had exclusive control over these premises. In fact, they were in the process of being renovated, were not ready for occupancy yet. The bankruptcy court noted that this was important for a couple of reasons, and I think this also has support in the case law. The case law talks about actual possession. It doesn't talk about legal possession. And actual possession is actually important for several different reasons. Chief among them are, one, it really does clarify that the debtor has no intent to do anything with these premises except reject. The second issue is it doesn't require the landlord really to do anything to the extent it wants to take the premises back. It doesn't have to evict the tenant. It doesn't have to take out the tenant's personal property. There was nothing there for Pacific Shores to do. Now, Pacific Shores reasons Pacific Atlantic sort of a do-nothing sort of rule. I don't think it's consistent with the holding in the case that that should apply in this sort of circumstance. I think specifically what Pacific Atlantic was addressing was whether under 365-D3 the landlord has to take some sort of action to force the debtor to make some sort of a formal move to reject a lease if it doesn't want anything to do with a lease. Here it's unquestioned that that was done. We took the formal move to reject this lease by filing the motion and serving it on Pacific Shores on the very first day of the case. So I don't think that's really even a question. And I think ultimately this also sort of ties into both what the bankruptcy court and the district court found is that if Pacific Shores was concerned about the debtor's intent with respect to the lease, like 365-D3 is supposed to address, or if it was concerned about, you know, uncompensated services, it could have at any point asked the debtor about its intent with respect to the property if it wasn't clear from the motion itself which we take it was. In that regard, then, if something like this happens again, exactly the same way from the initial notice of rejection, and circumstances change things, i.e., the lessee decides, gee, I don't want to go to hearing right now because we're considering maybe we can sublet, blah, blah, or some sort of things like the trustee says, gee, I'm not too sure what we're doing here, but we had to give the notice anyway, and it delays and expenses come in. Those will all be factored in, not only in what expenses should be allowed, but maybe whether it should be retroactive at all. And so, but you're saying when we adopt thinking machines in the First Circuit's position, that's the first step. The next step is to analyze what happened in this case. And in this case, due to your diligence, that the retroactivity application, the way it was applied, no expenses back to the date of notice, was appropriate under the law that you'd ask us to adopt. I believe that that's a proper interpretation. Is that your position? And, in fact, I would submit in the case where we're in, in the cases that actually support this theory as well. But the debtor does not seek to have it heard on short notice. If it delays somehow, if, for example, it extends the time to assume or reject leases and later at some date, wants to reject the lease to an earlier date, I don't want to say this unequivocally, but I do think it would be appropriate under the circumstances for a court to reject the debtor's request, because there has been uncertainty in those cases. It hasn't been absolutely clear from the outside of the case what the landlord wants. That's all included in the analysis you do under the thinking machines and the equitable powers as the district, as the bankruptcy court goes through that analysis. Absolutely. I think that's entirely proper. And, you know, if 365b3 in the legislative history is correct and that Congress enacted that provision of the code to deal with the uncertainty and to deal with uncompensated services, it would seem to me that in both cases the bankruptcy court's decision was right based on the facts in this case. There was no uncertainty and there were no uncompensated services. I also don't think that a sort of do-nothing rule here is appropriate, because I don't even know if we need to reach the question, because Pacific Shores concedes it. It explicitly stated at the hearing in its appellate briefs that it did nothing because it wanted to do nothing because it had to do nothing. This is not a case where a landlord sought to take back possession of the premises or sought to do anything. Although there might not be a requirement, I think it shows under the circumstances that the landlord had no intent here but to rent the administrative rent, which was another finding that was made by the bankruptcy court. And also, I don't think landlords ever made any sort of argument or assertion here that the debtor did anything to prevent it from taking back the premises. There was some allusion to, for example, keys not being returned and a surrender notice not being given at a hearing. I don't think that they ever provided any evidence of that in the record, and maybe the bankruptcy court didn't explicitly consider it when it made its decision. It wasn't one of the four factors it enunciated, at least. But in this case, the automatic stay wouldn't prevent Pacific Shores from doing anything that it reasonably could have done. The automatic stay wouldn't prevent it from trying to find another tenant, from engaging in a process of hiring a broker, from relisting the property, from taking any of the number of steps that it actually could have done under the circumstances. The problem here is that it actually never tried to do anything and has explicitly stated that it had no intent to do anything with the premises, instead relying on a do-nothing rule that it takes from Pacific Atlantic, which we don't think is appropriate under the circumstances. So in sum, I would just like to state that the abuse of discretion is the appropriate standard of review here. Based on the four factors enunciated by the bankruptcy court and affirmed by the district court, it was appropriate for the bankruptcy court in the exercise of its discretion and under the specific facts of the case to order this particular lease rejected effective as of the date the motion to reject was filed. Thank you. You have some rebuttal time remaining. The automatic stay did prevent Pacific Shores from taking actions in connection with reletting the premises. For example, we couldn't show the premises to a prospective tenant. But fundamentally, possession is not something that's technical. Possession is an incident of either ownership, if you have the owner fee, or the exclusive right to possession if you have a lease. Section 365d3 does specifically state that the trustee or debtor in possession shall perform its obligations until the rejection of the lease. This isn't about providing uncompensated common area maintenance services. This is about deprivation of possession of your property involuntarily, unlike trade creditors who can stop providing merchandise to a debtor. A landlord is involuntarily deprived of its property, and that is the very purpose for which the legislative history shows 365d3 was enacted. So possession is not just a factor, but the right to rent while deprived of possession is a statutory entitlement that the equitable power of the bankruptcy court cannot take away. The debtor's argument about incentivizing the landlord to act was specifically rejected in Pacific Atlantic. The debtor's argument that there's no economic value to the estate was specifically rejected in Section 365d3, which provides the right to rent, notwithstanding Section 503b1, which means notwithstanding any value to the state, again, as this Thank you, counsel. Thank you. We appreciate the arguments of both parties. Again, they've been very helpful in this case. With that, we will be adjourned for this morning's session.
judges: Hall, Brunetti, Graber